[S.F. No. 24211. June 11, 1981.]

RICHARD G. CORY, a Minor, etc., Plaintiff and Appellant, v. MICHAEL SHIERLOH, a Minor, etc., Defendant and Respondent.

**COUNSEL**

C. Afton Moore III, Judy R. Campos and Hefner, Stark & Marois for
Plaintiff and Appellant.

Strauss, Neibauer & Anderson, John J. Hollenback, Jr., Robert E. Cartwright, Edward I. Pollock, Harvey R. Levine, Stephen I. Zetterberg, Glen T. Bashore, William M. Shernoff and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

Edwin T. Weiberg, Steven A. Block and Porter, Scott, Weiberg & Delehant for Defendant and Respondent.

James O. Abrams, Dunne, Phelps, Mills & Jackson, Mires & Bierce, Lyn C. Bierce, Robert Hale McConnell, Hawkins & Cooper and M. Armon Cooper as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**RICHARDSON, J.**—Plaintiff challenges on constitutional grounds recent legislation (Bus. & Prof. Code, § 25602, subds. (b), (c); Civ. Code, § 1714, subds. (b), (c)) which is aimed at immunizing certain providers of alcoholic beverages from civil liability for injuries attributable to intoxication. We will sustain the subject legislation and the trial court's dismissal of plaintiff's complaint for failure to state a cause of action.

Plaintiff Richard Cory, a minor, allegedly was injured in February 1979 after he became intoxicated at a party and lost control of his vehicle while attempting to drive home. In his complaint for damages, plaintiff names as defendants the lessor of the building in which the party was held, the liquor stores which sold the liquor, and various persons including defendant Michael Shierloh, also a minor, who hosted and supervised the party. The complaint contains nine separate causes of action, four of them (the fourth, fifth, sixth and seventh) directed at defendant Shierloh.

The several causes of action allege various forms of tortious conduct by Shierloh and other defendants: the fourth, that defendants so negligently operated and controlled the leased premises that plaintiff became intoxicated and thereby sustained injuries; the fifth, that the manner of Shierloh's use and occupancy of the premises constituted a nuisance, in that he permitted thereon the unlicensed and unlawful sale and furnishing of alcoholic beverages to minors and others; the sixth, that Shierloh's unlicensed and unlawful conduct in furnishing alcoholic bev-

erages to plaintiff proximately caused his intoxication and subsequent injuries; and the seventh, that Shierloh negligently sold or furnished alcoholic beverages to plaintiff, knowing that plaintiff was obviously intoxicated and would be driving a car thereafter.

Defendant Shierloh interposed a general demurrer to the complaint, relying primarily upon a series of recent amendments to the Business and Professions Code and the Civil Code (which provisions are hereinafter collectively referred to as the 1978 amendments). He argues that, because of these legislative enactments, the sale or furnishing of alcoholic beverages to plaintiff was not a proximate cause of the latter's injuries. The trial court sustained Shierloh's demurrer without leave to amend, and after a judgment of dismissal was entered this appeal followed.

Before examining the critical statutes, we review several of our recent decisions which apparently prompted the subject legislation. In *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], we concluded that in an appropriate case the commercial vendor of alcoholic beverages was tortiously liable for injuries to third persons caused by the consumer of the beverage. Observing that "the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person" (p. 164), we overruled *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137], in which we had held that "it is the voluntary consumption, not the sale or gift, of intoxicating liquor which is the proximate cause of injury from its use; ..." (*Id.*, at p. 356.) In *Vesely*, we relied primarily upon section 25602 of the Business and Professions Code, which proscribed the sale or furnishing of alcoholic beverages to "any obviously intoxicated person." Consistent with long established law, we recognized that a presumption of negligence on the part of the furnisher of the drink would arise whenever section 25602 was violated.

Subsequently, in *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719], we noted that although *Vesely* relied upon section 25602 of the Business and Professions Code to support its holding, nevertheless, "the clear import of our decision was that there was no bar to civil liability under modern negligence law." (P. 325.)

Finally, in *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669], we extended the *Vesely* holding to non-

commercial providers such as "social hosts," relying upon both section 25602 and traditional common law negligence principles. Summarizing our rationale, we stated that "We think it evident that the service of alcoholic beverages to an obviously intoxicated person by one who knows that such intoxicated person intends to drive a motor vehicle creates a *reasonably foreseeable* risk of injury to those on the highway. . . . Simply put, one who serves alcoholic beverages under such circumstances fails to exercise reasonable care." (Pp. 152-153, italics in original.)

In 1978, notwithstanding the clear documentation of the appalling nature of the nationwide drunk driving problem, the Legislature with the Governor's approval enacted legislation which was expressly designed to "abrogate" each of our three foregoing decisions. First, subdivisions (b) and (c) were added to section 1714 of the Civil Code to qualify the general principle (presently expressed in subd. (a) thereof) that everyone is responsible for his own negligent or wilful acts. These amendments recite: "(b) It is the intent of the Legislature to abrogate the holdings in cases such as Vesely v. Sager . . ., Bernhard v. Harrah's Club . . ., and Coulter v. Superior Court . . . and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person, namely that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person. [¶] (c) No social host who furnishes alcoholic beverages to any person shall be held legally accountable for damages suffered by such person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of such beverages."

In addition, subdivisions (b) and (c) were added to section 25602 of the Business and Professions Code to qualify the prohibition (presently expressed in subd. (a) thereof) against selling or furnishing alcoholic beverages to any obviously intoxicated person. These sections state: "(b) No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage. [¶] (c) The Legislature hereby declares that this section shall be interpreted so that the holdings in cases such as Vesely v. Sager . . ., Bernhard v. Harrah's Club . . . and Coulter v. Superior Court . . . be abrogated in favor of prior judicial in-

terpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person."

Expressing a single exception to the foregoing sweeping immunity, the Legislature in section 25602.1 of the Business and Professions Code, added the following qualifying language: "Notwithstanding subdivision (b) of Section 25602, a cause of action may be brought by or on behalf of any person who has suffered injury or death *against any person licensed* pursuant to Section 23300 who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic beverage to any *obviously intoxicated minor* where the furnishing, sale or giving of such beverage to the minor is the proximate cause of the personal injury or death sustained by such person." (Italics added.) It is agreed that section 25602.1 is inapplicable here, because defendant Shierloh is not licensed to sell or furnish alcoholic beverages.

Plaintiff contends that his complaint survives the 1978 amendments because, first, they do not affect his nonnegligence theories of recovery and, second, the amendments are unconstitutional on equal protection grounds.

## I. Applicability of the 1978 Amendments

The trial court explained that the fourth, sixth and seventh causes of action of plaintiff's complaint "each requires that the defendant's act be the proximate cause of the injuries sustained by the plaintiff. Neither the negligent management of the premises [fourth cause], the serving of alcohol without a license [sixth cause], or the furnishing alcohol to an intoxicated minor [seventh cause] were the proximate cause of plaintiff's injuries. By legislative mandate the consumption of alcoholic beverages is the proximate cause of injuries resulting from intoxication, not the furnishing of such beverages by itself or in the management of one's property." As for the allegations of nuisance (fifth cause), the trial court ruled that the 1978 amendments were applicable to the sale or furnishing of alcoholic beverages in violation of licensing statutes, whether or not such acts also constituted a nuisance. Accordingly, the trial court concluded that each of plaintiff's purported causes of action is barred by the new statutory provisions.

■ We are forced to agree. The essence of the charging allegations of each cause of action asserted against defendant Shierloh is that he

unlawfully caused plaintiff's intoxication, or permitted such intoxication to occur, and that plaintiff was injured as a proximate result thereof. Yet, under section 25602, subdivision (b), of the Business and Professions Code, the Legislature in its wisdom has seen fit to provide that "*No person* who sells, furnishes . . . any alcoholic beverage . . . *shall be civilly liable to any injured person* . . . for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverages." (Italics added.) The provision is controlling here, immunizing as it does defendant Shierloh from liability to plaintiff, whose injuries are alleged to have resulted from his own intoxication following his consumption of alcoholic beverages. (Our interpretation of this section makes it unnecessary for us to decide whether defendants, who allegedly charged an entrance fee to the party in question, fairly may be deemed "social hosts" who are also shielded from liability by Civil Code section 1714, subdivision (c).)

Plaintiff correctly observes, however, that other provisions adopted by the 1978 amendments (namely, Civ. Code, § 1714, subd. (b) and Bus. & Prof. Code, § 25602, subd. (c)) appear to apply only to injuries inflicted upon a third person by the intoxicated consumer. Thus, in plaintiff's view, the amendments would not bar the present tort action by the injured consumer himself. Yet the two cited provisions are not substantive grants of immunity but are merely descriptions of the "prior judicial interpretation" on the subject of the liability of the provider of alcoholic beverages. Although the 1978 amendments are hardly models of draftmanship, we must conclude that section 25602, subdivision (b), reasonably construed, bars a suit by the intoxicated consumer as well as by third persons injured by him. Any other construction would produce a singularly anomalous result, permitting a tort recovery against the provider by the intoxicated consumer, while barring recovery against the same provider by an innocent third person who was injured by the same consumer.

## II. CONSTITUTIONALITY OF 1978 AMENDMENTS

Because of our conclusion that the 1978 amendments, if valid, would bar each of plaintiff's causes of action against defendant Shierloh, we examine plaintiff's constitutional arguments. Before testing the classifications herein presented we caution that our constitutional inquiry does not seek to determine whether the 1978 amendments were or are wise, sound, necessary, or in the public interest. There are ample reasons for concluding otherwise. We simply ask whether the legislation adopted,

for whatever purposes disclosed or undisclosed, is reasonably supportable. Each day the devastating effects of the drinking driver rage unabated with all of their tragic social and economic consequences. (*Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 897-898 [157 Cal.Rptr. 693, 598 P.2d 854].) We do not speculate on the influences that might have prompted the Legislature to answer this acute and growing problem by narrowly *restricting* rather than *enlarging* civil liability. In the final analysis the Legislature must answer to an informed, and perhaps ultimately aroused, public opinion for its action. We do not substitute our judgment for its own.

The controlling constitutional principle moving us to our conclusion herein was well expressed by Justice Traynor over 30 years ago in *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 129 [216 P.2d 825, 13 A.L.R.2d 252]: "This court cannot invoke the due process clause to invalidate a legislative policy that it may deem unwise without exercising judicial censorship directed not at the constitutionality of legislation but at its wisdom, ... This view has found increasing acceptance by the United States Supreme Court .... [¶] 'Despite evidence to the contrary, respondents see no evil to be corrected by this legislation. We are asked to agree with respondents and call the statute arbitrary and unreasonable. [¶] Looking through the form of this plea to its essential basis, we cannot fail to recognize it as an argument for invalidity because this Court disagrees with the desirability of the legislation. We rehearse the obvious when we say that our function is thus misconceived. We are not equipped to decide desirability; and a court cannot eliminate measures which do not happen to suit its tastes if it seeks to maintain a democratic system. *The forum for the correction of ill-considered legislation is a responsive legislature.*' [Citation.]" (Italics added.)

Appellate courts sensitive to the restraints imposed by article III, section 3, of the California Constitution, fully respect the deference which must uniformly and reciprocally be extended between equal and coordinate branches of government.

Plaintiff urges that the statutes at issue constitute an unconstitutional denial of equal protection of the laws, creating arbitrary and unreasonable classifications which are unrelated to any legitimate governmental purpose. (See *Cooper* v. *Bray* (1978) 21 Cal.3d 841, 847-848 [148 Cal.Rptr. 148, 582 P.2d 604]; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) More spe-

cifically, and as previously noted, the 1978 amendments exend to providers of alcoholic beverages a general immunity from suit, subject to the provisions of section 25602.1 of the Business and Professions Code, which preserves a cause of action by an injured person against a *licensed* seller or furnisher of alcoholic beverages to an obviously intoxicated *minor.* Plaintiff argues that the general rule of immunity and the statutory classifications drawn between licensed and unlicensed providers, and between minor and adult consumers, are neither rational nor serve any legitimate state purpose.

■ It is well settled that the Legislature possesses a broad authority both to establish and to abolish tort causes of action. As former Chief Justice Gibson put it over 30 years ago, "Except as the Constitution otherwise provides, the Legislature has complete power to determine the rights of individuals. [Citation.] It may create new rights or provide that rights which have previously existed shall no longer arise . . . ." (*Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 726 [192 P.2d 916]; accord, *Werner v. Southern Cal. etc. Newspapers, supra,* 35 Cal.2d 121, 125; *Ferreira v. Barham* (1964) 230 Cal.App.2d 128, 130 [40 Cal.Rptr. 739]; *Lowman v. Stafford* (1964) 226 Cal.App. 2d 31, 38-39 [37 Cal.Rptr. 681].)

In *Werner,* we upheld legislation (Civ. Code, § 48a) which precluded the recovery of general damages against newspapers and radio stations for defamation unless the plaintiff had unsuccessfully sought a suitable retraction. Discovering two bases upon which the Legislature reasonably could have so acted, namely, the danger of excessive recoveries, and the public interest in the free dissemination of ideas (35 Cal.2d at p. 126), we rejected an equal protection claim similar to that herein advanced. We observed that "It [the Legislature] is not prohibited by the equal protection clause from striking the evil [of excessive damages] where it is felt most" (p. 132), and that "The Legislature can make a classification for the purpose of applying a statute, not to the group classified, but to everyone except that group" (p. 134).

Similar reasoning sustains the 1978 amendments at issue here.

■ a) *General rule of immunity.* The Legislature's decision to abrogate *Vesely, Bernhard* and *Coulter,* and thereby preclude or substantially limit the liability of a provider of alcoholic beverages, may have been based upon a premise that it is unfair to require the provider (and his insurer) to share both the supervisory responsibility and the legal

blame with the consumer, whose voluntary consumption of alcoholic beverages is perhaps the more direct and immediate cause of any consequent injuries. We deem such a determination to be a rational one because for many years prior to *Vesely* the courts of this state (including ours) uniformly had followed such provider-immunity rule.

The Legislature also reasonably might have assumed that the imposition of sole and exclusive liability upon the consumer of alcoholic beverages would encourage some heightened sense of responsibility in the drinker for his acts, thereby ultimately reducing the frequency of alcohol-caused injuries. (See, e.g., *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 410 [143 Cal.Rptr. 13, 572 P.2d 1155] [dis. opn. by Clark, J.].) For these reasons we conclude that the general rule of immunity announced in the 1978 amendments is both founded upon a possible rational basis and reasonably related to a legitimate state purpose.

■ b) *Special rule of liability for licensed providers.* Assuming, as we do, that the Legislature acted properly in abrogating the causes of action previously authorized in our *Vesely, Bernhard* and *Coulter* opinions, is the preservation of liability against *licensed* providers serving obviously intoxicated *minors* rationally related to some legitimate state purpose? We conclude that it is.

We are not unmindful of the fact that the 1978 amendments constitute a patchwork of apparent inconsistencies and anomalies. Thus a licensed seller of liquor is liable to anyone injured by an obviously intoxicated minor served by the seller, while a nonlicensed, presumably illegal seller is not so liable. (Bus. & Prof. Code, § 25602.1.) A preferred liability status is thus given to those sellers who refuse to obtain licenses. The obviously intoxicated minor, and those injured by him, retain a cause of action against the seller, but an adult consumer, and those similarly injured by him do not (*ibid.*). Accordingly, whether or not the selling or supplying of the liquor is a tortious *cause* of a resultant injury turns on the *license* status of the supplier and the *age* of the consumer. Causation in a common law sense, whether actual or physical, proximate or legal, has never pivoted on such a perilous and seemingly irrelevant fulcrum. Nonetheless, our function is to find, if possible, some means to sustain, not reject, those amendments.

Limiting the liability to licensed, commercial providers may be reasonable because, presumably, such persons are experienced in the business of selling liquor and, ignoring the welcome ring of the cash

register, can more readily detect signs of intoxication among their patrons. It is also probable that such licensees are in a better position to defray the costs of liability and insurance than the usual "social host" or other unlicensed provider, although as we stressed in *Coulter* the risk to third persons from an intoxicated driver is identical, whether the hand that poured the drinks was that of a social host or bartender.

As for limiting the class of protected consumers to minors, the Legislature might reasonably have deemed such persons more in need of safeguarding from intoxication than adults, because of the comparative inexperience of minors in both drinking and driving. Given society's solicitous concern with minors (e.g., Bus. & Prof. Code, § 25658, prohibiting sales of liquor to minors), the Legislature perhaps might reasonably suspend the sole theory otherwise advanced in justification of the subject legislation, namely, that it is the consumption alone, not the furnishing, of liquor which causes the resultant deaths and injuries. With effort, a reasonable basis for the 1978 amendments may be found.

The judgment is affirmed.

Bird, C. J., Tobriner, J., Mosk, J., Newman, J., Rattigan, J.,* and Hanson (P. D.), J.,* concurred.

Appellant's petition for a rehearing was denied July 8, 1981.

---

*Assigned by the Chairperson of the Judicial Council.