State ex rel. Railroad v. Public Service Commission.

fested no intention of redeeming, a judicial ascertainment of the state of the account between her and defendant could serve no useful purpose.

Under the pleadings and the proof the judgment of the trial court was the only one that could have been rendered. It is therefore affirmed. All concur.

THE STATE ex rel. MISSOURI PACIFIC RAILROAD COMPANY and MISSOURI SOUTHERN RAILROAD COMPANY v. PUBLIC SERVICE COMMISSION OF MISSOURI et al.

Division One, March 7, 1924.

1. **DAMAGES: Allowed by Public Service Commission.** The Public Service Commission has no power to determine the amount of damages a shipper has suffered by the payment of what the shipper asserts was an excessive freight rate, and having found the charge was excessive require the railroad company to reimburse the shipper in the amount of such excess.

2. ———: ———: **Judicial Function.** The subject-matter of a claim for damages growing out of an excessive charge of freight rates, made by a shipper against a railroad company, is judicial, and under Article III of the Constitution the Public Service Commission has no power to adjudicate such a claim; neither did its predecessor, the Railroad and Warehouse Commission, have such power; neither could the General Assembly vest either commission with such judicial power.

Headnote 1: Carriers, 10 C. J. sec. 690. Headnote 2: Carriers, 10 C. J. sec. 690; Constitutional Law, 12 C. J. sec. 241.

Appeal from Cole Circuit Court.—*Hon. Henry J. West-hues,* Judge.

REVERSED.

*M. U. Hayden* and *Jas. F. Green* for appellant; *Jules Fremon* of counsel.

(1)   The Commission had no jurisdiction to make the award of reparation which was granted in this case. When the Legislature in 1919 (Laws 1919, p. 247) expressly repealed Secs. 3194, 3195 and 3196, R. S. 1909, it intended that they should be annulled in so far as giving the right to grant reparation.   (2)   The Commission's order is opposed to prior decisions made by it in similar cases, and opposed to decisions of this court. Rhodes-Burford Co. v. Elec. Co., 2 P. S. C. Rep. 656; Missouri Rate Cases, 3 P. S. C. 271; City of St. Joseph v. Gas Co., 3 P. S. C. 528; Cantwell v. Bucklin, 11 P. S. C. 532; State ex rel. Railroad Co. v. Com., 275 Mo. 60.   (3) The Public Service Commission law is a complete revision of the laws regulating railroads and therefore repeals all former provisions.   State ex rel. v. Roller, 77 Mo. 120; State v. Patterson, 207 Mo. 145; Poindexter v. Pettis Co., 246 S. W. 40.   (4)   The Commission's order was contrary to Sec. 10444, R. S. 1919, and was unauthorized and unwarranted, and the court erred in approving it.   Sec. 208, Transportation Act 1920; State ex rel. v. Com., 236 S. W. 858, par. 2; M. & O. Railroad v. Mill Co., 251 S. W. 436.

*L. H. Breuer* and *Frank E. Atwood* for respondents.

(1)   The powers and duties of the Board of Railroad and Warehouse Commissioners imposed by statute in relation to railroads, and not in conflict with the Public Service Commission Act are by statute conferred upon, and to be exercised by, the Public Service Commission.   Sec. 10543, R. S. 1919 (P. S. C. Law, 132.) Railroad corporations are "public utilities coming within the provisions of this act," and all laws applicable, not in conflict with the provisions of the Public Service Commission Act, are imposed, conferred and to be exercised and performed by it.   (2)   The provisions of Revised Statutes 1909, Sections 3179 to 3207, inclusive, governing the Board of Railroad and Warehouse Commissioners, conferred upon such board the power to de-

clare rates fixed and collected by a carrier to be unjust and further to find the damage sustained thereby and order reparation to the injured party. Secs. 3194, 3196, R. S. 1909. (3) The provisions of the railroad and warehouse laws authorizing reparations where rates were found to be unjust, which power was conferred upon the Public Service Commission, was not directly repealed by subsequent acts of 1919. The repeal subsequent to 1913, of the statutes defining the powers and authority of the Board of Railroad and Warehouse Commissioners, did not mitigate against or affect the transfer of said powers to the Commission by Sec. 10543, R. S. 1919 (P. S. C. Law, 132); Crohn v. Telephone Co., 131 Mo. App. 320-322; 36 Cyc. 1094. (4) Neither were such reparation statutes as they existed in the railroad and warehouse law, repealed by implication. The Public Service Commission law specifically provided that "the provisions of this act are not intended to repeal any law in force unless in direct conflict therewith, but is intended to be supplemental to such laws." Sec. 10550, R. S. 1919; Yall v. Gillham, 187 Mo. 405; State ex rel. v. Spencer, 164 Mo. 53; State ex rel. v. Patterson, 207 Mo. 145.

GRAVES, J.—This case has its origin in a statutory *certiorari* from the Circuit Court of Cole County to the Public Service Commission. This statutory *certiorari* was upon the application of relators, and after trial and an adverse judgment in the circuit court they appear here as appellants.

The record certified by the Public Service Commission was its record and findings in a complaint by the Mid-Continent Equipment & Machinery Company against relators (Missouri Pacific Railroad Company and Missouri Southern Railroad Company) in which complaint the complainant charged that relators had transported for it used rails (railroad iron rails) from Buckner, Missouri, to St. Louis, Missouri, upon which shipments the complainant was charged freight at the rate of $7.70 per

ton, when complainant charged that $4.50 was a reasonable rate for a gross ton of 2240 pounds.

In the complaint it is said that there was "an excessive and unreasonable charge to the extent of four hundred fifty-four and 12/100 dollars ($454.12) for which complainant asks reparation." The complaint before the Public Service Commission then thus proceeds:

"Complainant calls attention to the publication in Supplement 2 to Southwestern Lines Tariff 68-I on May 3rd and effective May 15, 1922.

"Complainant asks that a hearing be had of the above-mentioned complaint, and that such order or orders be made commanding the defendants above mentioned to refund to complainant the sum of $454.12 by way of reparation for the unreasonable charges hereinbefore described."

Both railroads filed similar answers, and we quote that of the Missouri Pacific Railroad only. Its answer is as follows:

"Now comes the Missouri Pacific Railroad Company, one of the defendants in the above-entitled cause, and for its separate answer to the complaint filed herein says that it appears from the statements contained in said complaint that the charges complained of were collected under tariffs of the railroad company which were duly fixed with this Commission, and which had not been suspended or set aside.

"It is further alleged in the complaint that defendant railroad company collected from the consignee the freight charges in said tariffs and that, therefore, the matter of such collection is one which this Honorable Commission has no jurisdiction to annul or set aside.

"This defendant, therefore, states that this Commission has no jurisdiction, under the Public Service Commission Law of the State of Missouri, to make any order or enter any judgment as to the matters set up and pleaded in the complaint filed herein, and defendant prays that such complaint be dismissed."

After a hearing the Public Service Commission entered an order, the pertinent portions of which are as follows:

"Order: 2. That the defendants, the Missouri Southern Railroad Company, and the Missouri Pacific Railroad Company, as they participate in the traffic, be and they are hereby directed to pay to the Mid Continent Equipment & Machinery Company, the sum of $201.52, damages by reason of the charging and collection of the unlawful rate described in the report attached hereto.

"Order: 3. That said award of damages shall be paid to said Mid-Continent Equipment & Machinery Company on or before December 1, 1922.

"Order: 4. That this order shall be in full force and effect on and after the 15th day of November, 1922, and the secretary of the Commission shall forthwith serve, by mail, upon each party in interest, a certified copy of the report and order herein, and the said defendants, the Missouri Southern Railroad Company and the Missouri Pacific Railroad Company, shall, in accordance with the provisions of Section 25 of the Public Service Commission Law, notify this Commission on or before November 13, 1922, whether the terms of this order are accepted and will be obeyed."

By subsequent order the foregoing order or judgment was amended so as to make the sum awarded $328.53, instead of $201.52.

After unsuccessful motions for rehearing in the Public Service Commission the cause was removed by statutory *certiorari* to the Circuit Court of Cole County, as above indicated. That court upheld and affirmed the record and findings of the Public Service Commission, and the present appeal followed.

The motions for rehearing in the Public Service Commission are full of details, in every way challenging the right of that body to enter the order which we have set out, supra. These motions need not be set out in full, but such portions thereof as may become pertinent will be noted in the course of the opinion. This outlines the case.

I.  This case presents several angles.  In substance the sole matter before the Public Service Commission, under the wording of the complaint filed, was the determination of two legal questions, (1) was claimant entitled to reparation or damages? and (2) the amount of same.  The railroads challenged the jurisdiction of the Commission to thus enter the field of the courts.  This is one angle to the controversy.  The answers were broad enough to cover this question.  Another angle to the controversy is that the Public Service Commission Act did not grant to this body of limited powers and duties, the right to determine reparations.  In the opinion of the Commission now before us, no express words granting the power are claimed, but it is urged that certain statutes of the old Railroad and Warehouse Commissioners Act, gave that body the power to ascertain reparations due, and these statutes were incorporated in the Public Service Commission Act by reference.  This is another and different angle of the case.  Finally it is conceded that these statutes were repealed a year or more before the complaint in this case arose, in fact or in substance, but it is urged that this repeal did not take them out of the Public Service Commission Law.  This is another angle of the controversy.  Of these in order, or until a determining ruling precludes further inquiry.

*Angles of Controversy.*

II.  It must be noted that this complaint does not ask for the fixing of a future rate, but it charges that the freight paid was at the rate of $7.70 per gross ton (2240 lbs.) when a reasonable rate was $4.50 per gross ton.  This $4.50 rate had been put in by the railroads of their own motion long after this freight transaction, but before the complaint.  Complainant then asks that the Commission find for it in the difference between the rate charged and the alleged reasonable rate.  These purely legal questions the Commission kindly adjudicated for claimant.  First, they determined that the $7.70

*Jurisdiction: Judicial Power: Damages.*

rate was an unreasonable rate, and then they determined what was a reasonable rate ($5.385), and adjudged that the railroads pay claimant the difference, i. e. $328.53, which "said award of damages shall be paid to said Mid-Continent Equipment & Machinery Company on or before December 1, 1922."

The Commission concedes that there was on file a schedule of rates for such shipment of $7.69½ per gross ton, and that such schedule of rates were in force, or on file, at the time the $7.70 was paid, and therefore at the time the claim involved arose. This, however, is beside the question we now have in mind. That question is, can the Public Service Commission of Missouri, under the Constitution of Missouri as to courts, drag railroads before it for the sole question of determining the amount of damages a shipper has suffered by reason of paying what said shipper avers to be an unreasonable rate? What power may be granted by Congress to the Interstate Commerce Commission need not be considered. The powers which can be granted to a purely administrative board by the General Assembly of Missouri, must be measured by our Constitution. The questions presented by the complaint in this case are purely judicial. Article III of the Missouri Constitution places the powers of Government into three distinct departments "and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed or permitted."

It is true that it is not always an easy matter to determine by which majesty (created by Article III of the Constitution) a given function must be performed. [Rhodes v. Bell, 230 Mo. l. c. 150, et seq.] But there is no trouble in the case before us. To determine whether one person is entitled to recover money from another by way of damages cannot be anything but a judicial question, and as such must be determined by the courts. The Public Service Commission is not, and under our Con-

stitution cannot be, a court. [Lusk v. Atkinson, 268 Mo. l. c. 116 et seq.; Mo. Constitution, Art. VI, secs. 1, 28 and 31.] The lawmakers could not make it a judicial body, and confer upon it judicial functions. Such a body does not fall within the classes of judicial bodies to which judicial functions can be granted. What we say as to the Public Service Commission applies with equal force to its predecessor, the Railroad and Warehouse Commission. The General Assembly could not have made a court of that Commission, any more than it could make a court of the Public Service Commission. If the Legislature undertook to empower the Public Service Commission to hear and determine a lawsuit, its act would be void. Such is a judicial function, and must be assigned to the judiciary under our state government. The same was true as to the old Railroad and Warehouse Commission. The claim involved in this case is a pure claim for damages. It had no place before the Public Service Commission. Nor could it have had a legal status before the old Railroad and Warehouse Commission under our Constitution, notwithstanding the statutes cited in the opinion of the Commission, Sections 3194 and 3196, Revised Statutes 1909, which were repealed before the present action arose according to the contention of appellant. A statute authorizing such a body to make a finding in a case like this, whether the finding was to be final, or merely prima-facie evidence, is void. We need not discuss this, however, with the view we entertain. In State ex rel. v. Ryan, 182 Mo. l. c. 355, VALLIANT, J., said:

"All the judicial power in this State is by our Constitution vested in certain courts therein named. [Art. 6, sec. 1, Mo. Const.] The General Assembly has no authority to create any other tribunal and invest it with judicial power."

So we rule that under our Constitution the lawmakers cannot vest purely judicial functions in either a Public Service Commission or a Railroad and Warehouse Commission. We further rule that the subject-matter

of the claim involved here was purely judicial, and as such had no place before the Public Service Commission. In other words it was not within the jurisdiction of that body, and could not have been legislated there.   With these views it is unnecessary to discuss other questions. The judgment of the circuit court affirming the order of the Commission is reversed and the cause remanded to the circuit court with directions to reverse the order of the Commission.   All concur; *James T. Blair, J.*, in the result.