**AMERICAN MOTORCYCLIST ASSOCIATION, et al., Plaintiffs-Respondents,**

v.

**The CITY OF ST. LOUIS and Eugene Camp, Defendants-Appellants.**

No. 42220.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 23, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

---

3. All the other evidence, including that of Mrs. Benson, was that defendant intentionally shot both the Bensons.

268

Michael E. Hughes, Asst. City Counselor, St. Louis, for defendants-appellants.

Shepherd, Sandberg & Phoenix, Reed W. Sugg, Herzog & Kral, Richard B. Specter, St. Louis, for plaintiffs-respondents.

PER CURIAM.

Judgment in a court tried case declared a City of St. Louis, Missouri, ordinance unconstitutional. We reverse.

On March 9, 1979, the Board of Aldermen of the City of St. Louis passed Bill 119. This bill prohibited the operation of motorcycles in all city parks, on-duty police motorcycles excepted. Shortly after its enactment plaintiffs, the American Motorcycle Association and six City of St. Louis residents, sought a temporary restraining order and permanent injunction against enforcement of the ordinance. On April 17, 1979, the trial court issued a temporary restraining order. Subsequently, a hearing was conducted and the order was made permanent. The court held such action was required because enactment and enforcement of the ordinance was "a violation of the due process and equal protection guaranties of the Constitution of the United States and the Constitution of the State of Missouri and in excess of the (city's) police power . . . ."

As this is a court tried case the lower court's decision must be upheld unless there is no substantial evidence to support the judgment, or the judgment is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Because no findings of fact were made we presume that all facts were found in accordance with the result

reached. *Hoefel v. Hoefel,* 533 S.W.2d 704, 707 (Mo.App.1976). Further, due regard shall be given to the trial court's ability to judge the credibility of witnesses. Rule 73.01.

The city's first contention is that enactment and enforcement of the ordinance is an exertion of its police power. We agree. "It is abundantly clear that the City of St. Louis had full police power to regulate and control traffic on its streets. . . ." *Automobile Club of Missouri v. City of St. Louis,* 334 S.W.2d 355, 363 (Mo.1960); § 304.120.2.[1] Because it sought to control traffic on the streets within city parks the ordinance was obviously an exertion of the municipality's police power. However, plaintiffs argue Bill 119 is in excess of the city's police power because the ordinance violates the equal protection and due process provisions of the Missouri and United States Constitution. U.S.Const. amend. XIV; Mo.Const. art. 1, §§ 2, 10; art. III § 40(30).

■ We think it axiomatic that all ordinances, including those regulating the use of streets, must not be repugnant to the federal or state constitutions. However, ordinances enacted pursuant to a city's police power, including Bill 119, enjoy a presumption of constitutionality. *Home Builders Association v. Kansas City,* 555 S.W.2d 832, 835 (Mo. banc 1977). Also, because plaintiffs challenge the ordinance's constitutionality they bear the burden of proof on that issue. *Bellerive Investment Co. v. Kansas City,* 13 S.W.2d 628, 639 (Mo.1929). Plaintiffs contend the ordinance should be subjected to "strict scrutiny," under both due process and equal protection analysis, because it infringes upon their fundamental rights to speech and assembly. *NAACP v. Alabama ex rel. Paterson,* 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958); *Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925). This argument is without merit. The record shows that plaintiffs failed to introduce one iota of evidence that the ordinance would prohibit any *person* from speaking or assembling. Nor was there any evidence any

person would be denied access to the parks. Rather, the evidence only showed that the ordinance would prohibit the operation of *motorcycles* in city parks. Plaintiffs did not even attempt to establish that the operation of a motorcycle is a symbolic form of speech which the ordinance trammels. See *Spence v. Washington,* 418 U.S. 405, 409–410, 94 S.Ct. 2727, 2729, 2730, 41 L.Ed.2d 842 (1974). Our examination of the record compels us to reach the common sense conclusion that the operation of a motorcycle is merely a mode of transportation, not a form of communication or assembly. Furthermore, from the record presented we must conclude plaintiffs failed to carry the burden of proving the ordinance affected their fundamental rights of speech and assembly.

■ Because the ordinance concerns no fundamental right we cannot hold that it violates either the due process or equal protection guarantees unless it fails to withstand the "rational relation test." The substantive due process aspect of this test mandates that the ordinance have a rational relationship to a legitimate state interest. *United States v. Caroline Products Co.,* 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938). Similarly, the equal protection clause requires that classifications drawn by the ordinance have a rational relationship to a legitimate state interest. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). If necessary we must conceive of possible reasons for enactment that would furnish a rational basis for the law. See *Williamson v. Lee Optical Co.,* 348 U.S. 483, 490, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

■ We shall examine the due process issue first. Section three of the ordinance provides the ordinance is "necessary for the immediate preservation of the public peace and safety . . . ." We think it obvious that the public peace and safety are legitimate municipal interests. Is the ordinance rationally related to these interests? We think so. At trial the city advanced 12

1. Statutory references are to RSMo 1978.

ways the public peace and safety would be enhanced by enforcement of the ordinance. Many of these overlap and duplicate one another. In sum, the city argued the ordinance furthers the public peace and safety because the prohibition of motorcycles from city parks would: eliminate from city parks the loud noise caused by motorcycles; prevent motorcycles from racing and speeding in the parks; free park users from the dangers incident to motorcyclists riding in groups; enhance the purpose for which the city parks were created; and eliminate the problems of enforcing existing laws pertaining to the operation of motorcycles in city parks. Clearly enforcement of the ordinance would produce the above benefits. Thus, there is no substantive due process violation because the ordinance is rationally related to the public peace and safety.

■ We now turn to the equal protection argument. Plaintiffs contend in passing the ordinance the city arbitrarily distinguished between motorcyclists and persons operating other motor vehicles. We cannot agree. First, as described above the ordinance was enacted to further legitimate municipal interests. Second, the ordinance's classification of motorcycles into one group and other motor vehicles into a second class is rationally related to the city's interests as the prohibition of motorcycles will produce the above delineated benefits. Third, all persons within the class of motorcyclists are treated equally. Thus, there is no equal protection violation.

Because the ordinance passes muster under the rational relation test we must find it to be constitutional. Therefore, the trial court erred in declaring and applying the law by holding Bill 119 to be in violation of the due process and equal protection guarantees. It follows that the lower court's judgment must be reversed. *Murphy v. Carron*, 536 S.W.2d at 32. We are reminded of the mandate that "the judiciary ... not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines ...." *City of New Orleans v. Dukes*, 427 U.S. at 303, 96 S.Ct. at 2517.

Reversed.