Richard SIMPSON, et al., Appellants,

v.

Walter KILCHER, et al., Respondents.

No. 69314.

Supreme Court of Missouri,
En Banc.

April 19, 1988.

Glenn R. Gulick, Jr., Joplin, for appellants.

Richard E. McFadin, F.A. White, Jr., Kansas City, for respondent Jams, Inc.

Raymond E. Whiteaker, Springfield, for respondents John Q. Hammons Hotels, Inc. and Holiday Inns, Inc.

HIGGINS, Judge.

In the early morning of October 6, 1985, Walter Kilcher drove his car out of a bar parking lot, across three lanes of highway, over a concrete median and directly into a motorcycle, causing injuries to its rider, Richard Simpson. Kilcher was subsequently arrested, charged and convicted of driving while intoxicated. Simpson sued John Q. Hammons–Hotels, Inc., and Holiday Inns, Inc., owners of the Water Wheel Lounge, and Jams, Inc., owner of a drinking establishment known as The King of Clubs, alleging their servants negligently served alcohol to Kilcher after he had become obviously intoxicated. The trial court dismissed Simpson's suit because the liquor licensees had not been convicted of selling alcohol to a person obviously intoxicated or to a minor, the necessary element of such suits under section 537.053, RSMo 1986.[1]

---

1. Section 537.053 provides:

 **Sale of alcoholic beverage not proximate cause of personal injuries or death—exceptions—requirements—(dram shop law).—**
 1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933–34, extra session, page 77), it has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.
 2. The legislature hereby declares that this section shall be interpreted so that the hold-

Simpson concedes that he must prove the statute unconstitutional in order to pursue his case.

Simpson contends section 537.053 is void as being contrary to the due process and equal protection clauses of the Missouri Constitution and the United States Constitution; the open court provision in article I, section 14, of the Missouri Constitution; and the separation of powers provision in article II, section 1, of the Missouri Constitution. Affirmed.

■ Simpson argues that section 537.053 creates an impermissible obstruction to the courts in violation of Missouri Constitution, article I, section 14, and the first amendment to the United States Constitution. This argument is not persuasive because the constitutional provision was not designed to create rights, but only to allow a person claiming those rights access to the courts when such a person has a legitimate claim recognized by the law. *State ex rel. National Refining Co. v. Seehorn,* 344 Mo. 547, 127 S.W.2d 418 (1939); *Horner v. David Distributing Co.,* 599 S.W.2d 100 (Mo.App.1980). A similar contention was considered and rejected in *Schulte v. Missionaries of La Sallette Corp. of Mo.,* 352 S.W.2d 636 (Mo.1961), *overruled on other grounds, Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599 (Mo.1969), where the Court held the rule of charitable immunity was not "in any way" a violation of the open court provision in article I, section 14.

The cases cited by Simpson, *Strahler v. St. Luke's Hospital,* 706 S.W.2d 7 (Mo. banc 1986), and *State ex rel. Cardinal Glennon Mem. Hosp. v. Gaertner,* 583 S.W.2d 107 (Mo. banc 1979), involved situations where the plaintiffs' claims were legitimate and recognized by the law, but were barred by a technical, statutory precondition or requirement. Strahler had a legitimate medical malpractice claim which she brought beyond the two-year statute of limitations, but within two years of obtaining her majority. The statutes in *Cardinal Glennon Mem. Hosp.,* required that malpractice claims be pursued at the Professional Liability Review Board before the lawsuit could be brought. All the cases cited by Simpson involved legitimate claims, recognized by law, which were being hindered by some technical provision.

In this case Simpson's claim was not a legitimate one recognized by law because it was specifically prohibited by the legislature. Section 537.053, RSMo 1986, declares it is "the policy of this state ... to prohibit dram shop liability...." Neither the constitution nor the cases cited by Simpson can be interpreted as giving a claimant a right to bring into court any grievance he wants. Such an interpretation would require this Court to invalidate numerous statutes and overrule numerous decisions in the area of tort law, including those concerning sovereign immunity, wrongful death, workers' compensation, and claims under the Federal Tort Claims Act.

Simpson's argument does not recognize that under the statute the criminal conviction required by subsection 3 of 537.053 is not a precondition to access to the courts—it is a condition to the existence of a cause of action. *Childress v. Sams,* 736 S.W.2d 48, (Mo. banc 1987). Thus, in cases where the plaintiff is a victim of drunk driving, the conviction of the liquor licensee is an element of plaintiff's right to sue, not an obstruction or bar to his right to sue.

ings in cases such as *Carver v. Schafer,* 647 S.W.2d 570 (Mo.App.1983); *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo.App. 1980); and *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519 (Mo.App.1981), be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person.

Simpson argues that section 537.053 is invalid because it violates the separation of powers doctrine, Missouri Constitution, article II, section 1, in that the statute: (a) contains an impermissible effort by the legislature to declare and interpret the law by stating how the statute will be interpreted; (b) is an impermissible effort by the legislature to dictate to the judiciary the weight to be given evidence by declaring that proximate cause cannot be found unless the liquor licensee is first convicted; (c) unlawfully delegates to the executive branch discretionary authority to admit or exclude plaintiff in presenting his claim to the courts by permitting the prosecuting attorney's charging decision to control whether a right to sue can arise; (d) improperly places burdens upon and causes undue delay in the administration of justice by forestalling suit until the liquor licensee is convicted; and (e) attempts retroactive abrogation of existing judicial decisions.

■ Simpson's claim that the legislature impermissibly interprets the law and dictates the effect to be given evidence must be rejected. To support his claim, Simpson cites *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987), which involved a statutory provision dictating that intoxilyzer results, when the test is performed by someone with a department of health permit, are competent evidence in an alcohol-related traffic offense. The court held:

> [T]he Legislature may not declare the weight to be given evidence or what evidence shall be conclusive proof of an issue of fact; ... that is to say, determining whether evidence is of probative value is a legal question, and the legislature cannot impair judicial analysis and resolution of such questions.

*Id.*, 400 N.W.2d at 876. In this case section 537.053.2 does not "impair judicial analysis" because no analysis is necessary. Under the facts of this case the statute simply bars Simpson's cause of action. The reference to proximate cause was designed to restate the reasoning used by common law courts in rejecting dram shop liability. By explicitly rejecting the reasoning of *Carver, Sampson* and *Nesbitt*, the legislature made it clear that dram shop liability would no longer exist in Missouri. The reference to the cases may not have been the best means available for the legislature to express its intent, but in this case there can be no doubt the intent was to prohibit dram shop liability. A similar attack on a dram shop act which specifically abrogated established case law was rejected and the statute upheld in *Cory v. Shierloh*, 29 Cal. 3d 430, 174 Cal.Rptr. 500, 629 P.2d 8, (1981), *superseded by statute* as stated in *Baker v. Sudo*, 194 Cal.App.3d, 936, 240 Cal.Rptr. 38 (1987). The reasoning of *Cory* is persuasive.

■ This Court is required to construe legislative enactments so as to render them constitutional and avoid the effect of unconstitutionality, if it is reasonably possible to do so. *State Tax Commission v. Administrative Hearing Commission*, 641 S.W.2d 69 (Mo. banc 1982). Thus this Court interprets 537.053 as a legislative prohibition of dram shop liability coupled with the creation of a new, limited cause of action rather than an impairment of judicial analysis or an unconstitutional precondition on a valid cause of action. This Court has held:

> "The constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 58, 74 L.Ed. 221, 65 A.L.R. 939 [1929].... "It can be assumed without misgiving that there is no vested right in any remedy for a tort yet to happen which the Constitution protects. Except as to vested rights, the legislative power exists to change or abolish existing statutory and common-law remedies."

*Holder v. Elms Hotel Co.*, 338 Mo. 857, 866, 92 S.W.2d 620, 624 (1936). Because this case does not involve vested rights, the interpretation upholding this statute is both authorized and required by the cases cited.

Simpson also argues that section 537.053.3 impermissibly delegates to the executive branch discretionary authority to permit or exclude plaintiff's claims by permit-

ting the prosecuting attorney's charging decision to control whether a right to sue can arise. The Missouri cases cited by Simpson, *State ex rel. Missouri Pac. R.R. Co. v. Public Service Commission*, 303 Mo. 212, 259 S.W. 445 (1924), and *State Tax Commission*, 641 S.W.2d 69, do not support his argument of impermissible delegation. The issue in *Missouri Pacific* was whether the Public Service Commission could determine whether one person is entitled to recover money from another by way of damages. The *State Tax Commission* case held the Administrative Hearing Commission lacked the power to make declaratory judgments because such a ruling would be void as being a violation of the doctrine of separation of powers and an invasion of judicial authority. The other cases cited by Simpson are equally inapposite.

■ Because this Court is required to construe this statute in a manner that renders it constitutionally valid if reasonably possible to do so, *State Tax Commission*, 641 S.W.2d at 73, this Court determines the statute creates a limited cause of action rather than delegating to the executive branch the authority for determining when suit can be brought. The plain, obvious and rational meaning of the statute is always to be preferred to any "curious, narrow, or strained construction." *Auld v. Terminal R.R. Ass'n of St. Louis*, 463 S.W.2d 297, 298–299 (Mo.1970), *cert. denied*, 401 U.S. 940, 91 S.Ct. 938, 28 L.Ed.2d 220 (1971). The plain meaning of section 537.053 is that dram shop liability is prohibited and a limited cause of action is created. It would be a strained construction for this Court to find that 537.053 has the effect of delegating discretionary authority to the executive branch concerning a plaintiff's right to bring an otherwise valid cause of action. Here the cause of action is not valid because it was specifically prohibited by the statute.[2]

■ Simpson claims that the statute causes undue delay in the administration of

justice because a civil suit is delayed until the criminal conviction of the liquor licensee is obtained. This claim is rejected because the legislature is entitled to provide reasonable restriction or expansion of causes of action which it creates. *Chapman v. State Social Secur. Commission*, 235 Mo.App. 698, 700, 147 S.W.2d 157, 158–59 (1941); *Nistendirk v. McGee*, 225 F.Supp. 881, 882 (W.D.Mo.1963) (abolishing common law action and replacing it with statutory action under 28 U.S.C., section 1346, which does not allow for a jury trial). Restrictions on causes of action created by statute in the area of tort law have been consistently upheld. *See e.g. Glick v. Ballentine Produce, Inc.*, 396 S.W.2d 609, 615 (Mo.1965), *appeal dismissed*, 385 U.S. 5, 17 L.Ed.2d 5, 87 S.Ct. 44 (1966), (upholding the limitation on damages in wrongful death cases, reasoning that the legislature created "the right of action where none existed before, and it may condition the right as it sees fit"); *In Re Air Crash Disaster Near Chicago*, 644 F.2d 594 (7th Cir.1981), *cert. denied, Lin v. American Airlines, Inc.*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981), (upholding restriction on punitive damages in wrongful death actions in which Missouri law is applicable).

■ Simpson argues that section 537.053 violates the doctrine of separation of powers because it attempts retroactive abrogation of existing judicial decisions mentioned in the statute, *citing Cerro Metal Products v. Marshall*, 467 F.Supp. 869 (E.D.Pa. 1979), *aff'd*, 620 F.2d 964 (3d Cir.1980). In *Cerro* the Secretary of Labor (the executive branch) attempted to overrule existing judicial precedent and insist on retroactive application. *Cerro* is inapposite because this case does not involve retroactive application. This Court held in *Lambing*, 739 S.W.2d at 718, that the application of section 537.053 is prospective in nature. That the legislature may prospectively abrogate existing case law in the area of tort law is well established. *See, e.g. De May v. Liberty Foundry Co.*, 327 Mo. 495, 37 S.W.2d

---

2. Although not given retroactive application, *Lambing v. Southland Corp.*, 739 S.W.2d 717 (Mo. banc 1987), the statute also specifies abro-

gation of the causes of action recognized by the court of appeals in *Carver, Sampson,* and *Nesbitt.*

640 (Mo.1931). In *De May* this Court rejected a challenge to the Missouri Workers' Compensation system which was based on allegations that the doctrine of separation of powers had been violated. Under this authority, Simpson's assertions that section 537.053 violates separation of powers is rejected.

Simpson next argues he was denied equal protection of the laws guaranteed by Missouri and United States Constitutions in that the statute, without rational basis, classifies plaintiffs into groups that can sue if a conviction of the liquor licensee is obtained and those who cannot sue because no conviction has been obtained. He argues that this statute should be subject to strict scrutiny because the right of access to the courts is similar to the right to petition, which is a fundamental constitutional right under *DeJonge v. State of Oregon,* 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937). This argument fails because claimants do not have a right to bring into court any grievance they want. The right to petition is for those with a valid cause of action. Tort law is replete with cases where certain grievances have not been recognized, such as emotional distress, wrongful birth, wrongful life, and wrongful death cases brought by distant relatives of the deceased, to name but a few.

 Again, Simpson's argument fails to realize that no cause of action exists under the statute in the absence of a conviction. Potential tort claimants are not treated differently because only those cases involving a conviction of the liquor licensee result in a claimant having a potential tort claim.

Assuming arguendo that Simpson's characterization of these unequal "classes" is correct, his equal protection challenge would nevertheless fail. Disparate treatment of similar classes is permissible where no fundamental right or suspect class is involved, and such classification is rationally related to a legitimate state interest. That the rational basis test is applicable when a statute classifies persons seeking to assert a tort claim into separate classes is well established. *See, e.g.,*

*Crane v. Riehn,* 568 S.W.2d 525 (Mo. banc 1978) (upholding Missouri's wrongful death statute).

Section 537.053 is supported by rational justification in that the legislature made a policy decision to place responsibility for these accidents on the drunk driver. It also confines the liability of liquor licensees to those cases where conduct is so flagrant it becomes objectively provable by criminal conviction. Thus, judicial efficiency is promoted by preventing lawsuits against tavern owners every time a patron injures himself, or another.

 Simpson also asserts this classification resulted in denying him due process of law guaranteed by the Missouri Constitution, article I, section 10. This argument also fails to recognize that two classes were not created. This Court in *Childress,* 736 S.W.2d at 50, recognized that subsection 3 of 537.053 created "a new, but very limited, dram shop liability." *Id.* at 50. By implication, this holding recognizes that the statute does not treat similar classes differently, but creates a new cause of action, conditioned on the conviction of the liquor licensee. Assuming the statute could be construed as creating two unequal classifications, it would nevertheless be valid because it would survive scrutiny under the rational basis test.

To support his due process argument, Simpson cites *American Motorcyclists Ass'n v. City of St. Louis,* 622 S.W.2d 267 (Mo.App.1981), which involved due process and equal protection challenges to an ordinance prohibiting the operation of a motorcycle in city parks, but permitted the operation of other vehicles. The court, in discussing the rational relation test, explained: "The substantive due process aspect of this test mandates that the ordinance have a rational relationship to a legitimate state interest. *United States v. Carolene Products Co.,* 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938). Similarly the equal protection clause requires that classifications drawn by the ordinance have a rational relationship to a legitimate state interest. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513,

2516, 49 L.Ed.2d 511 (1976)." *American Motorcyclists Ass'n,* 622 S.W.2d at 269. Because it has already been determined that this statute is supported by rational bases, appellant's substantive due process argument is rejected.

■ Simpson argues further that the statute is irrational in that it first pronounces that the consumption of alcohol, rather than its furnishing, shall be the proximate cause of the injuries inflicted and then, in subsection 3, proceeds to let such cases be filed if the liquor licensee is convicted of selling alcohol to a minor or obviously intoxicated person. This provision survives scrutiny under the rational basis test because the legislature could reasonably have believed minors and obviously intoxicated persons were not as capable of controlling their behavior and thus not completely responsible for their actions. The Court in *Cory,* 629 P.2d at 14, held this reasoning was sufficient to pass scrutiny under the rational basis test saying: "The legislature might reasonably have deemed such persons more in need of safeguarding from intoxication than adults because of the comparative inexperience of minors in both drinking and driving." *Id.* Similarly, the legislature could have found that persons obviously intoxicated are more in need of statutory protection.

Respondents assert that it is not necessary for this Court to rule on the constitutional questions because they are not essential to the disposition of the case, *citing Stenger v. Great Southern Sav. & Loan Ass'n,* 677 S.W.2d 376 (Mo.App.1984). Respondents' argument could affect only those questions regarding due process and equal protection because these constitutional attacks center on subsection 3, which grants the limited cause of action. Respondents' argument is that this type of suit is prohibited whether the statute is constitutional or unconstitutional because subsection 3 is severable. If the statute is valid, it prohibits Simpson's cause of action; if subsection 3 is invalid, the first two subsections nevertheless prohibit this cause of action.

■ Respondents argue that subsection 3 is severable because it is not essentially and inseparably connected with the other provisions. Section 1.140, RSMo 1986, provides: "The provisions of every statute are severable ... unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependant upon the void provisions that it cannot be presumed the legislature would have enacted the valid provisions without the void one...." The test of the right to uphold a law, some portions of which may be invalid, is whether or not in so doing, after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the legislature would have enacted if it had known that the exscinded portions were invalid. *State ex rel. Audrain County v. Hackman,* 275 Mo. 534, 543, 205 S.W. 12, 14 (Mo. banc 1918).

In this case subsections 1 and 2 are complete, constitutional, legislative enactments prohibiting dram shop liability. A reading of 537.053 reveals the legislature clearly intended first and foremost to abrogate the rule of dram shop liability. That this was the intent of 537.053 was recognized in *Lambing,* 739 S.W.2d at 719 ("Section 537.-053 expresses a legislative intent to shield purveyors of intoxicants from liability for the injuries caused by their drunken patrons."), and in *Andres v. Alpha Kappa Lambda Fraternity,* 730 S.W.2d 547 (Mo. banc 1987). This conclusion regarding the severability of subsection 3 does not affect Simpson's argument relating to the open Court provision and separation of powers because those arguments focus on the entire statute. Simpson's due process and equal protection arguments which have been rejected on other grounds could also be rejected because subsection 3 is severable.

■ Simpson duplicates his previous arguments in his final point and alleges that the statute has deprived him of procedural due process guaranteed by Missouri and United States Constitutions. Specifically, Simpson argues that his claim for dram shop liability is a property right sufficient

to invoke the due process clause of the fourteenth amendment and cites several cases including *Martinez v. California*, 444 U.S. 277, 281–282, 100 S.Ct. 553, 557, 62 L.Ed.2d 481 (1980), *reh'g denied*, 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980).

Whether a rule of tort law can become a property right was decided in the negative by *Holder*, 92 S.W.2d 620. In that case, the appellant alleged that the workers' compensation statute took away his common law right of action and was, therefore, unconstitutional because it deprived him of his "constitutional right to a hearing before a constitutional court and deprived him of his property without due process of law." *Id.* at 621. In rejecting appellant's claim, the court relied on its decision in *De May*, 37 S.W.2d 640, wherein it states, *quoting Adams v. Iten Biscuit Co.*, 630 Okla. 52, 57, 162 P. 938, 942 (1917): "It may be safely stated as a general rule that the citizen has no property in a rule of law, and that, while rights which have accrued to him under operation of existing laws and have thereby become vested may not be taken away by a change of rules, he cannot be heard to complain if the rule is changed before any rights have accrued to him thereunder." *De May*, 37 S.W.2d at 647. In this case, Simpson's injury occurred after the enactment of 537.053; therefore he has no vested right of action and can state no property right in a discarded rule of law.

■ Simpson also alleges he was denied due process because section 537.053 creates an irrebuttable presumption that there is no proximate causation in dram shop cases unless the tavern keeper is convicted under the criminal code. This allegation is incorrect because the legislature was simply restating the traditional common law rule that the consumption of alcohol, rather than its furnishing, is the proximate cause of any resulting injury. The statute creates no presumption at all. Once a plaintiff establishes that he has a claim recognized by law, the court must determine if proximate cause exists without the use of a presumption.

■ Simpson also restates his argument that the statute conditions plaintiff's right of access to the courts upon the decision of the prosecuting attorney whether to prosecute the liquor licensee without granting plaintiff a right to notice and hearing before the official, thereby depriving plaintiff of procedural due process. A reading of section 537.053, however, reveals no language which could be construed as granting discretion to the executive branch. Subsection 3 of section 537.053 provides that if there has been a conviction of the liquor licensee under section 311.310 for selling alcohol to someone obviously intoxicated or to a minor, the licensee becomes subject to a civil suit for dram shop liability. It is likewise difficult to determine what could constitute a grant of discretion in 311.310. That section defines the crime, and section 56.060, RSMo 1986, requires the prosecutor to "commence and prosecute all civil and criminal actions in his county in which the county or state is concerned." The prosecutor must necessarily exercise discretion in deciding whether sufficient evidence exists to institute a prosecution. The exercise of this discretion, however, cannot result in a denial of due process to Simpson in this collateral proceeding. This argument could also be rejected because, as discussed *supra*, in order to construe this statute so as to render it constitutionally valid, as required by *State Tax Commission*, 641 S.W.2d 69, this Court determines section 537.053.3 creates a new, limited cause of action rather than a delegation of discretion.

Because all of Simpson's attacks on section 537.053 have been rejected, the judgment of dismissal of Simpson's suit is affirmed.

BLACKMAR, DONNELLY, WELLIVER and ROBERTSON, JJ., concur.

BILLINGS, C.J., dissents in separate opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of BILLINGS, C.J.

BILLINGS, Chief Justice, dissenting.

Because I do not agree that *Section 537.-053, RSMo 1986*, is consistent with the mandates of the constitutional provisions which guarantee open courts, *Mo. Const. art. I, § 14*, separation of powers, *Mo. Const. art. II, § 1*, and equal protection of the laws, *U.S. Const. amend. XIV, § 1* and *Mo. Const. art. I, § 2*, I dissent.

The open courts provision declares:

> That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay.

This provision was "designed to protect the citizen in the use of the courts to enforce such rights and remedies as were recognized by the law at the time of its adoption and as might thereafter be created by law." *State ex rel. National Refining Co. v. Seehorn*, 344 Mo. 547, 557, 127 S.W.2d 418, 424 (1939). The provision generally renders invalid legislative restrictions on recognized common law rights of redress, such as tort law causes of action. *See Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7, 11–12 (Mo. banc 1986); *State ex rel. Cardinal Glennon Mem. Hosp. for Children v. Gaertner*, 583 S.W.2d 107, 110 (Mo. banc 1979).

Any legislative restriction on a common law right of redress, including abolition of the right, is valid if it is not arbitrary or unreasonable and it provides for an adequate alternative course of action. *See Strahler*, 706 S.W.2d at 12. Such a restriction would also be valid if the legislature

showed an overpowering public necessity for the abolition or restriction and no alternative method of meeting such public necessity. *Smith v. Department of Ins.*, 507 So.2d 1080, 1088 (Fla.1987).[1]

The court in *Carver v. Schafer*, 647 S.W. 2d 570, 575 (Mo.App.1983), recognized a common law cause of action against commercial sellers of liquor by the drink who serve alcohol to noticeably intoxicated patrons who subsequently injure third persons. Although this common law right of action was not explicitly established until 1983, it is still a recognized common law right. The common law is not static, but, rather, it is ever evolving. *Lambing v. Southland Corp.*, 739 S.W.2d 717, 718 (Mo. banc 1987). Given the common law cause of action recognized in *Carver*, the *National Refining Co.* decision requires that the legislature's subsequent attempt to abolish that right be reviewed under the dictates of the open courts provision.

*Section 537.053* provides a conditional alternative to the cause of action recognized in *Carver*. A person injured by an intoxicated patron of an establishment licensed to sell liquor by the drink may sue the seller if it has been *convicted* of selling alcohol to that patron after he became obviously intoxicated. *Section 537.053(3)*. Suit may also be brought if the seller is *convicted* of serving a minor who subsequently causes injury to someone. *Id.* This alternative remedy, however, is not adequate.

Prosecutors in Missouri have unbridled discretion in their decisions as to whether

**1.** *Strahler* and *Smith* do not conflict with *De May v. Liberty Foundry Co.*, 327 Mo. 495, 37 S.W.2d 640 (1931), which upheld the constitutionality of Missouri's workers' compensation law. *De May, id.* at 508, 37 S.W.2d at 647, does state that the legislature has the power to change or abolish existing statutory or common law causes of action. The *De May* decision, however, must be read in light of the issue before the court. In abolishing a worker's right of action against his employer for on-the-job injuries, the legislature provided the reasonable alternative remedy established by the workers' compensation statute. It was only after finding the existence of this alternative remedy that the Court in *De May* upheld the statute. *See id.* at

508–11, 37 S.W.2d at 647–48. Given the implicit importance of the alternative remedy to the decision in *De May*, it cannot be said to conflict with *Strahler* and *Smith*.

Neither do *Strahler* and *Smith* conflict with *Holder v. Elms Hotel Co.*, 338 No. 857, 866, 92 S.W.2d 620, 624 (1936). This decision simply quotes a sentence from *Silver v. Silver*, 280 U.S 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929), which states that the federal constitution does not forbid legislative abolition of common law causes of action. As the federal constitution has no open courts provision, *Holder* has no applicability to a construction of such a provision in Missouri's constitution.

or not to prosecute cases, *State v. Smith,* 422 S.W.2d 50, 66–67 (Mo. banc 1967), *cert. denied,* 393 U.S. 895, 89 S.Ct. 150, 21 L.Ed. 2d 176 (1968), including cases against sellers of liquor. *State ex inf. McKittrick v. Wallach,* 353 Mo. 312, 322–23, 182 S.W.2d 313, 318–19 (banc 1944). "The prosecutor retains sole discretion to determine whether to initiate prosecution...." *State ex rel. Norwood v. Drumm,* 691 S.W.2d 238, 240 (Mo. banc 1985). Factors other than sufficiency of the evidence enter into the decision to prosecute. A prosecutor may decide not to bring criminal charges because he believes the action against the seller's license by the Division of Liquor Control sufficiently insures compliance with the state liquor laws. There is also the possibility that the prosecutor will refuse to prosecute a culpable seller of liquor either because of his relationship to the seller or because of enmity he holds against a particular injured person who is thereby prevented from bringing suit. Thus, the conditional alternative provided in *§ 537.053(3)* is inadequate because it could well permit sellers subject to liability under *Carver* to avoid civil suits simply because the local prosecutor decides not to prosecute the seller. *See State ex rel. Schultz v. Harper,* 573 S.W.2d 427, 431 (Mo.App.1978). Neither is it apparent that this restriction of the right to sue sellers of liquor is justified by an overpowering public necessity or that there is no other method of meeting any necessity. Because its alternative remedy is not adequate and it is justified by no public necessity, *§ 537.053* violates the open courts provision.

*Section 537.053* is also contrary to the Missouri Constitution's separation of powers provision, *Mo. Const. art. II, § 1,* which prohibits persons vested with powers under one branch of government from exercising any power belonging to either of the other two branches. This is because that statute impermissibly delegates to executive officers the discretionary authority to determine when an injured person will have a cause of action.

The principal opinion seeks to avoid this conclusion by finding that *§ 537.053* does not delegate authority to the executive, but, rather, creates a new, limited cause of action. The statute, however, does both. Whether or not the statute explicitly delegates any authority to the executive, its effect is, in fact, a delegation of authority. The prosecutor has the power either to set into motion the process which might eventually permit a suit by an injured party against the seller or not to set the process into motion at all. The prosecutor also has the power to terminate the process after he has initially started it. *Norwood,* 691 S.W. 2d at 240–41 (recognizing the prosecutor's power at common law, and in Missouri, to enter a *nolle prosequi* of a criminal case but limiting the power after a jury verdict of guilty). This is discretionary authority by an executive officer which determines when a suit may be brought.

That the delegation of discretionary authority to executive officers to determine when an injured party may bring a suit is contrary to the separation of powers provision is shown by *State ex rel. Consolidated School Dist. C–4 v. Blackwell,* 254 S.W. 2d 243 (Mo.App.1952). In that case, a county clerk had decided which of two school districts claiming the same territory was legally organized and which was entitled to have taxes levied by him for its support. The court concluded that the clerk, by undertaking these decisions, had improperly assumed judicial powers. *Id.* at 246. Similarly, prosecutors who make decisions which result in some injured persons becoming entitled to bring a suit, and in others not becoming so entitled, are improperly exercising judicial powers. It is no difference that the clerk in *Blackwell* assumed the power on his own initiative while the prosecutors will assume it under the authority of *§ 537.053.* The legislature has no power to grant authority to an executive officer to do that which in itself violates the constitution.

*Section 537.053* is also unconstitutional under the equal protection clauses of the United States Constitution, *U.S. Const. amend. XIV, § 1,* and the Missouri Constitution, *Mo. Const. art. 1, § 2.*

Under *§ 537.053,* some persons injured by intoxicated persons who were served

alcohol by commercial sellers of liquor by the drink may bring suit against the seller and others may not. As the right to bring suit for the recovery of damages is not a fundamental right, *see Crane v. Riehn*, 568 S.W.2d 525, 530 (Mo. banc 1978) (right to bring suit for wrongful death not a fundamental right), and no suspect class is involved, this classification made by *§ 537.-053* is violative of the equal protection clauses only if it is not rationally related to a legitimate state interest. *See Belton v. Board of Police Comm'rs*, 708 S.W.2d 131, 139 (Mo. banc 1986).

The legislature's goal in making the classification found in *§ 537.053* was to confine the liability of sellers of liquor to those injured in their patrons' accidents to those cases in which the seller's conduct was so flagrant that it is provable by criminal conviction. This goal is not reasonably reached by the means provided in the statute because of the prosecutor's discretion. It is quite likely that many sellers of liquor who have violated the law will avoid civil suits because they avoid criminal prosecution for reasons not related to their conduct. Thus, many injured persons to whom the legislature intended to grant a cause of action against a seller of liquor will not obtain that right of redress by the means provided in *§ 537.053*. Given the discretion of prosecutors to file charges in some cases of flagrant conduct and not to do so in other such cases and the possibility that some prosecutors will diligently prosecute flagrant offenders and others will not, the means provided by the legislature to meet its goal is palpably arbitrary. Because the classification made by the statute is not rationally related to the legislature's goal, it violates equal protection.

The respondents in this case cannot avoid the impact of a finding that the cause of action established by *§ 537.053(3)* violates the separation of powers provision or the equal protection clauses on the ground that *subsection 3* is severable from the remainder of the statute. The rule on severability is that if part of a statute is invalid, the remainder of the statute is still to be upheld when what remains is a law which is complete and susceptible of constitutional enforcement and which the legislature would have enacted had it known that a portion of its original statute was invalid. *State ex rel. Enright v. Connett*, 475 S.W. 2d 78, 81 (Mo. banc 1972).

When *subsection 3* is severed from the remainder of *§ 537.053*, that which remains completely immunizes sellers of liquor from liability for injuries caused by their patrons. While the legislature did intend to limit the liability of sellers of liquor by enacting *§ 537.053*, it did not completely immunize them. The obvious reason the legislature did not completely do away with liability for sellers of liquor is that it did not want them to have the opportunity to take advantage of immunity by flagrantly and irresponsibly serving minors and the obviously intoxicated. I suggest that this concern about irresponsible behavior by sellers of liquor would have led the legislature to leave the law as it was rather than grant complete immunity to sellers of liquor for injuries caused by their patrons.

Because *§ 537.053* cannot withstand constitutional challenge, the judgment dismissing the suit in this case should be reversed.

